FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2004 DEC 22 P 3: 30

In the Matter of the Arbitration between

JEA,

    Petitioner,

vs.

Case No. 3:04CV1313-V-99MCR

EL PASO MUNICIPAL ENERGY, L.L.C.,

    Respondent.

---

## COMPLAINT
## AND
## PETITION TO VACATE ARBITRATION AWARD

Petitioner, JEA, lodges this Complaint and petitions the Court to enter an order, pursuant to Title 9, United States Code, Section 10, vacating and setting aside the Interim Award dated October 12, 2004 and the Award of Arbitrators dated December 8, 2004, made in an arbitration proceeding between the parties and alleges:

### Parties and Jurisdiction

1.   Petitioner, JEA, is a body politic and corporate organized and existing under the laws of the State of Florida, with its principal place of business at 21 West Church Street, Jacksonville, Duval County, State of Florida.

2.   Respondent, El Paso Municipal Energy, L.L.C., ("EPM") is a corporation duly

organized and existing in the State of Delaware, and registered as a foreign corporation in the State of Florida. Respondent's principal address is Houston, Texas. Respondent is a wholly owned subsidiary of El Paso Corporation, which is also a Delaware Corporation.

3. This court has jurisdiction over the persons and subject matter in the above-captioned matter, pursuant to the provisions of Title 9, United States Code, Sections 1 and 10, and Title 28, United States Code, Section 1332. The amount in controversy between the parties, exclusive of interest and costs, exceeds $75,000.

4. Venue is proper in Jacksonville, Florida, because Jacksonville was the site of the arbitration proceeding at issue.

## The Agreement Between the Parties

5. On or about April 12, 2001, the Petitioner and Respondent entered into a written Natural Gas Sales Agreement which involves the sale and purchase of natural gas. This Natural Gas Sales Agreement (also referred to as "Agreement") is attached as **Exhibit 1**.

6. The Agreement evidences transactions involving commerce among the several states. EPM agreed to sell, and JEA to purchase, natural gas for a term of twenty (20) years, ending May 31, 2021, with a ten (10) year renewal option. (Agreement, par. 2.1). The natural gas is to be transmitted via pipeline from either Texas, or Georgia to Duval County, Florida. ( Agreement, pars. 1.1(j), 1.1(v), 1.1(ss), 3.1, 4.1).

7. JEA's maximum cumulative liability under the Natural Gas Sales Agreement is two hundred million dollars ($200,000.000) (Agreement, par. 5.2(f). EPM's maximum

cumulative liability under the Agreement is also two hundred million dollars ($200,000,000). (Agreement, par. 5.2(f)).

8. El Paso Corporation, by virtue of a separate but related agreement with JEA, is the guarantor of EPM's Payments under the Natural Gas Sales Agreement up to a maximum of two hundred million dollars ($200,000,000). A true copy of JEA's agreement with El Paso Corporation is attached as **Exhibit 2**.

9. The Natural Gas Sales Agreement, **Exhibit 1**, contains an Arbitration clause (paragraph 14.1), for the arbitration of "any controversy or claim arising out of or relating to this Agreement or the breach thereof". The Arbitration Clause provides in pertinent part, that the location for such arbitration proceeding shall be Jacksonville, Florida.

## The Arbitration Proceeding

10. On or about April 22, 2004, JEA invoked the arbitration clause of the Agreement, seeking "adequate assurance of payment or performance" under paragraph 16.01 of the Agreement, entitled Financial Responsibility. Attached as composite **Exhibit 3** is a true copy of JEA's correspondence to the American Arbitration Association (hereinafter "AAA") and EPM initiating the arbitration proceeding that ensued. Through the arbitration proceeding JEA sought additional adequate assurance from EPM in the form of a standby letter of credit in the amount of fifty-seven million dollars ($57,000,000).

11. Subsequent to initiation of the arbitration proceeding the parties proceeded to select three arbitrators to hear the case pursuant to AAA arbitration rules. A true copy of the

portion of the AAA rules relating to commercial arbitrations and the selection of arbitrators is attached as **Exhibit 4**.

12. AAA Commercial Arbitration Rule 16 provides in part:

> (a) Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence....
>
> (b) [T]he AAA shall communicate the information to the parties....

13. AAA Commercial Arbitration Rule 17 provides in part:

> (a) Any arbitrator shall be impartial and independent... and shall be subject to disqualification for
>
> (I) partiality or lack of independence,
>
> (iii) any grounds for disqualification provided by applicable law....

14. Consistent with the provisions of AAA rules R-16 and R-17 set forth in paragraphs 12 and 13 above the AAA in or about early June 2004 furnished the parties a list of seventeen (17) prospective arbitrators, together with biographical material relating to each. From this list the parties, separately, were permitted to eliminate (veto) anyone who was unacceptable. The remainder were to be ranked in order of acceptability and furnished to the AAA case manager by each party.

15. On or about June 16, 2004, the parties submitted their list of strikes and ranked

prospective arbitrators to the AAA case manager. Based on these submissions the AAA named the following three arbitrators in early July 2004: Bill L. Bryant, Jr., Esquire; C. Scott Greene, Esquire; and Harold D. Miller, Jr., Esquire.

16. In or about mid-July 2004 the ADA case manager instigated a conflict check, asking that the three proposed arbitrators advise the AAA of any conflicts of interest, based on the nature of the case before them. All three proposed arbitrators submitted information which they believed could possibly represent a possible conflict of interest in the case to be arbitrated, which the AAA, in turn, forwarded to the parties.

17. Attached as **Exhibit 5** is a true copy of the biographical material disclosed by the AAA to the parties with respect to Bill L. Bryant, Jr., Esquire. Attached hereto as **Exhibit 6** is the conflict disclosure made by Bill L. Bryant, Esquire, consisting of a memorandum prepared by an individual named Daphne Gilbert, Legal Assistant to Bill L. Bryant. **Exhibits 5 and 6** represent the sum total of the disclosures made by the AAA and/or Mr. Bryant relative to Mr. Bryant and possible conflicts of interest which Mr. Bryant might have, prior to arbitration panel's decision in the case on the merits.

18. On September 10, 2004, following a preliminary hearing held by telephone, the arbitration panel entered an order bifurcating the hearing - - the first part to be completed through briefing and a hearing, if necessary, to be held thereafter on December 15-17, 2004, in Jacksonville, Florida. A true copy of the order so directing is attached hereto as **Exhibit 7.**

19. On October 12, 2004, following the submission of briefs and reply briefs by the parties, the arbitration panel entered an Interim Award in favor of Respondent EPM. A true copy of the award is attached as **Exhibit 8**. The substance of the award was set forth in a single conclusory sentence.

20. On October 15, 2004, JEA became aware of additional information relating to Arbitrator Bill Bryant which had not been previously disclosed, and which revealed "evident partiality" on the part of Mr. Bryant. This information was as follows:

   (a) <u>Enron</u>: Mr. Bryant was employed by Enron as a lobbyist with both the executive and legislative branches of Florida State government during the years 1998, 1999, 2000 and 2001.

   (b) <u>World Services Group</u>: Mr. Bryant shares a membership, through his law firm, with El Paso Corporation in World Services Group.

   (c) <u>Florida Power and Light</u>: Florida Power and Light is a client of Akerman Senterfitt, the law firm in which Mr. Bryant is a shareholder.

21. The information set forth in paragraph 20 was discovered through self-initiated research, commenced after October 14, 2004, by a paralegal employed by counsel for JEA only after the arbitration panel had been selected.

22. The information in paragraph 20(a) relating to Enron should have been disclosed because Enron and El Paso Corporation, are business partners who jointly owned Citrus Corporation. Citrus in turn owned the Florida Gas Transmission Company. The

Florida Gas Transmission Company, pursuant to paragraph 1.1(v) of the Natural Gas Sales Agreement, **Exhibit 1**, owns the pipeline through which the gas being purchased by JEA is bring transmitted. Thus Enron was effectively El Paso's partner in the very contract which was being arbitrated.

23. The information in paragraph 20(b) relating to World Services Group should have been disclosed because World Services Group is a network that brings together professional services firms and companies. Akerman Senterfitt is the sole law firm member of the Group in Florida, and one of Akerman's shareholders is on the Board of Directors of World Services Group. El Paso Energy and two El Paso Corporation subsidiaries are corporate members of World Services Group.

24. The information in paragraph 20(c) relating to Florida Power and Light should have been disclosed because Florida Power and Light is also a World Group Services associate. In addition, in January 2004, the FPL Group, of which Florida Power and Light is a wholly-owned subsidiary member, entered into an option agreement with subsidiaries of El Paso Corporation to participate in the ownership of a liquified natural gas terminal under development in the Bahamas that will transport natural gas from the terminal to Florida. This pipeline will connect into the existing Florida Gas Transmission Company pipeline near the Florida Turnpike. Thus, a client of Mr. Bryant's firm is in a joint venture with El Paso, respondent in this case, in the natural gas business.

25. None of the information set forth in paragraphs 20, 22, 23, or 24 was known

to Petitioner until after the Interim Award was entered by Mr. Bryant and the other arbitrators on October 12, 2004.

26. On October 18, 2004 JEA requested that the Arbitration Panel issue an expanded (reasoned) decision. This request, however, was denied by the panel.

27. On November 18, 2004, JEA filed with the AAA a request that the Interim Award of the arbitration panel be vacated for the reasons set forth in paragraph 20, above. A copy of this request is attached hereto as composite **Exhibit 9**. JEA also requested that the arbitration panel not render any further decisions in the case.

28. The AAA, in response to JEA's assertion that Arbitrator Bill Bryant had concealed his partiality requested that Arbitrator Bryant make a disclosure concerning same. A copy of this disclosure is attached hereto as **Exhibit 10**. Arbitrator Bryant acknowledged that Enron was previously his client and the existence of his law firm's relationship with World Services Group and Florida Power and Light, but attempted to minimize the significance of same.

29. The arbitration panel thereafter proceeded, wrongfully, on December 8, 2004, to issue a final award in the case. A copy of the final award is attached hereto as **Exhibit 11**. The final award confirmed the arbitration panel's October 12, 2004 decision to deny JEA's request that EPM issue an additional Letter of Credit in its favor, and awarded attorney's fees to EPM.

30. Title 9 United States Code, Section 10 (a)(2), provides, in part, that the Court

may make an order vacating an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them." The decisional law, federal, Texas, and Florida, establish that evident partiality is exhibited when an arbitrator, as here, fails to disclose facts that might create a reasonable impression of partiality.

31. Arbitrator Bill Bryant Jr.'s failure to disclose, prior to arbitration, his relationship with Enron, a business partner of Respondent, which shares facilities, decisions, financial support of same, and goals with El Paso, and/or his and his firm's relationship with World Services Group and with Florida Power and Light, concealed his partiality. This requires that the Court vacate the arbitration panel's interim and final awards.

## Relief Requested

32. Based on the facts alleged in paragraphs 1-31 above and the applicable law, JEA requests that:

    (1)    That the Court allow the parties to conduct limited discovery with respect to said allegations;

    (2)    That the Court grant the parties an evidentiary hearing on the merits of this Complaint and Application; and

(3)   That the Court vacate the Interim Arbitration Award entered on October 12, 2004 and the Final Arbitration Awarded entered on December 8, 2004.

(4)   Any other relief that the Court deems just and appropriate.

Respectfully submitted,

_____
Ernst D. Mueller, Esquire
Deputy General Counsel
Office of General Counsel
117 West Duval Street, Suite 480
Jacksonville, FL 32202
(904) 630-1871
(904) 630-1316 Facsimile
Attorney for JEA

G:\General Litigation\MUELLER\JEA v El Paso\Complaint.Vacate.Award.EM.wpd